**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| MARIO JUAREZ-SALDANA, )<br><br>        Petitioner, )<br><br>vs. )<br><br>UNITED STATES OF AMERICA, )<br><br>and )<br><br>MARCELL MILLS, in his Official )<br>Capacity as Warden of the West )<br>Tennessee Detention Facility, )<br><br>        Respondents. )<br> ) | No. 2:09-cv-02786-JPM-cgc |

**ORDER GRANTING UNITED STATES' MOTION TO DISMISS FIRST AMENDED
PETITION FOR WRIT OF HABEAS CORPUS**

On December 23, 2009, Petitioner Mario Juarez-Saldana filed a First Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Docket Entry ("D.E.") 7.) On December 30, 2009, the United States filed a Motion to Dismiss Petitioner's First Amended Petition for Writ of Habeas Corpus. (D.E. 8.) Petitioner responded in opposition on January 6, 2010. (D.E. 12.) A telephonic hearing was held on the motion on February 12, 2010. Representing Petitioner were Randy Alden, Esq. and Tatine Darker, Esq. Representing the United States were Tim

DiScenza, Esq. and Lisa Olson, Esq.  For the following reasons, the Court GRANTS the United States' Motion to Dismiss.

## I.    BACKGROUND AND PROCEEDINGS

Pursuant to an extradition treaty between the United States and Mexico, the United States issued a warrant for Petitioner's arrest on May 21, 2009.  (Resp't's Mot. to Dismiss at 13.)  The government of Mexico seeks Petitioner's extradition to face criminal charges in connection with a 1997 aggravated homicide. (Id.)  On September 9, 2009, a United States Magistrate Judge conducted an extradition hearing.  (Id. at 13-14.)  On October 8, 2009, the magistrate judge issued an order certifying Petitioner's extradition and committing him to custody pending a final extradition decision by the Department of State.  (Case No. 2:09-mj-00014-tmp, Order Granting Certification of Extraditability and Order of Commitment, (D.E. 32).)  Petitioner did not challenge his extradition certification through a writ of habeas corpus despite his right to do so.  (Resp't's Mot. to Dismiss at 14.)

Petitioner, instead, submitted documents to the Secretary of State on October 21, 2009, requesting that his extradition be denied on humanitarian grounds.  (Pet'r's Resp. to Resp't's Mot. to Dismiss ("Pet'r's Resp.") at 6; Ex. 6, (D.E. 12-6), Letter to Secretary of State.)  Petitioner claims that his extradition to Mexico will likely result in torture in violation of the United

2

States' obligations under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT") and the Foreign Affairs Reform and Restructuring Act ("FARR Act").  (Id.)  On December 3, 2009, after reviewing Petitioner's supporting materials, the Department of State issued a surrender warrant directing Petitioner to be released to Mexican authorities by December 8, 2009.  (Resp't's Mot. to Dismiss at 14.)  On December 7, 2009, Petitioner filed a motion to stay his extradition and a petition for a writ of habeas corpus contesting the Secretary's extradition decision.  (D.E. 1, 2.)  Petitioner seeks two actions from the Court: first to find that the Secretary's extradition decision is subject to judicial review, and second, upon making this determination, to consider the merits of his habeas petition. (Pet'r's Resp. at 1.)

Petitioner contends that jurisdiction to review the Secretary's extradition decision is available pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 et seq., which permits judicial review of "final agency action for which there is no other adequate remedy in a court."  Id. § 704. Petitioner argues that the CAT and the FARR Act supersede the rule of non-inquiry, which traditionally precludes courts from reviewing the Secretary's extradition decisions.  Therefore, according to Petitioner, habeas review must be available

3

pursuant to the APA because no other judicial remedy exists to contest the Secretary's decision.

In opposition, the United States argues that neither the CAT nor the FARR Act supersedes the rule of non-inquiry. The United States contends that the FARR Act expressly prohibits judicial review of the Secretary's extradition decisions. The enactment of the REAL ID Act of 2005, according to the United States, provides the sole and exclusive means for judicial review of CAT claims and such review is limited to CAT claims arising in the immigration context, not extradition.

These arguments and applicable background information will be addressed in turn by the Court.

II.  **ANALYSIS**

To determine whether the CAT or the FARR Act had any effect on the extradition process, the Court must begin by analyzing the process prior to their ratification and enactment.

**a. Extradition and the Rule of Non-Inquiry Prior to the CAT**

Extradition is a process by which a fugitive may be returned to another country to face criminal charges. In the United States, the procedures for extradition are governed by statute. See 18 U.S.C. §§ 3184 and 3186. The statutes establish a two-step procedure which divides responsibility for extradition between a judicial officer and the Secretary of State. United States v. Kin-Hong, 110 F.3d 103, 109 (1st Cir.

1997).  The process begins with the submission of an extradition request by a foreign state to the United States Department of State.  See Restatement (Third) of Foreign Relations Law § 478 cmt. a (1987).  Assuming that the request is deemed valid, it is referred to the United States Attorney for the district in which the fugitive is believed to be located, and a complaint is filed in the district court seeking certification of the fugitive's extraditability and a warrant for his arrest.  Id.; 18 U.S.C. § 3184.

Once a fugitive is in custody, a United States district judge or magistrate judge conducts a hearing to determine (1) whether there is probable cause to sustain the charge; (2) whether the alleged crime is extraditable; and (3) whether the requested individual is the one sought by the foreign state. See, e.g., Mironescu v. Costner, 480 F.3d 664, 665 (4th Cir. 2007).  If these requirements are met, the judge conducting the hearing must certify the fugitive as extraditable to the Secretary of State, the United States official responsible for ultimately determining whether to surrender the fugitive to the requesting country.  See id.; 18 U.S.C. §§ 3184, 3186; (Resp't's Mot. to Dismiss, Johnson Dec., (D.E. 8-1), ¶ 3.)

While the certification decision may not be appealed directly, it may be challenged through a petition for a writ of habeas corpus.  See, e.g., Mironescu, 480 F.3d at 665.  The

5

district court's review of the extradition certification, however, is limited to the following: "(1) whether the extradition judge had jurisdiction to conduct the proceeding; (2) whether the extradition court had jurisdiction over the individual sought; (3) whether the extradition treaty was in force; (4) whether the crime fell within the treaty's terms; (5) whether there was probable cause that the individual sought committed the crime; and (6) whether the crime was within the political offense exception." See, e.g., Cornejo-Barreto v. Seifert ("Cornejo I"), 218 F.3d 1004, 1009-10 (9th Cir. 2000) (internal citations omitted).

Once the judicial process is complete – meaning that the court has certified that the fugitive is extraditable and any habeas review has concluded – the Secretary of State acts in her discretion to ultimately determine whether the fugitive will be surrendered to the custody of the requesting country.  18 U.S.C. § 3186.  In determining whether a fugitive should be extradited, the Secretary may consider de novo any and all issues properly raised before the extradition court.  Kin-Hong, 110 F.3d at 110. The Secretary may also consider factors including, but not limited to, humanitarian and foreign policy considerations, the ability to attach conditions to a surrender, and diplomatic methods available to obtain fair treatment.  See, e.g., id. at 111.

This bifurcated process, which divides responsibility between a judicial officer and the Secretary of State, reflects the fact that extradition proceedings contain legal issues particularly suited for judicial resolution, such as standards of proof, sufficiency of evidence, and treaty construction, yet simultaneously implicate questions of foreign policy, which are better answered by the Executive Branch.  Id. at 110.  Both "institutional competence rationales and our constitutional structure, which places primary responsibility for foreign affairs in the [E]xecutive [B]ranch, support this division of labor."  Id. (citing United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 319-322 (1936)).

The common law rule of non-inquiry, which strictly limits the scope of judicial review in extradition decisions, further reinforces this statutory division.  Under the rule of non-inquiry, courts refrain from "investigating the fairness of a requesting nation's justice system," and from inquiring "into the procedures or treatment which await a surrendered fugitive in a requesting country."  See e.g., id. (internal citations omitted).  The rule, like extradition procedures generally, is rooted in concerns about institutional competency and notions of separation of powers.  Since 1852, courts have concluded that the decision to extradite involves foreign policy concerns within the purview of the Executive Branch that should not be

addressed by the courts.  See, e.g., In re Thomas Kaine, 55 U.S. 103, 110 (1852) ("[A]n Executive order of surrender to a foreign government is purely a national act, [it] is not open to controversy; nor can it be doubted that this executive act must be performed through the Secretary of State . . . ."); Hoxha v. Levi, 465 F.3d 554, 563 (3d Cir. 2006); Cornejo-Barreto v. Siefert ("Cornejo II"), 379 F.3d 1075, 1083 (9th Cir. 2004), vacated as moot, Cornejo-Barreto v. Siefert ("Cornejo III"), 389 F.3d 1307 (9th Cir. 2004); Demjanjuk v. Petrovsky, 776 F.2d 571, 584 (6th Cir. 1985).

In Munaf v. Geren, 128 S. Ct. 2207 (2008), the Supreme Court reaffirmed the principles supporting the rule of non-inquiry, noting that the fear of torture in a foreign country "is a matter of serious concern, but . . . that concern is to be addressed by the political branches, not the judiciary." Id. at 2225 (citing M. Bassiouni, International Extradition: United States Law and Practice 921 (2007) ("Habeas corpus has been held not to be a valid means of inquiry into the treatment the relator is anticipated to receive in the requesting state.").[1]

---

[1]     Munaf involved the transfer of American citizens to Iraqi authorities for crimes committed in Iraq.  128 S. Ct. at 2213.  The rationale supporting the Court's refusal to exercise the power of the writ of habeas corpus, however, is still applicable to this case.  See id. at 2222 (noting that "[a]t the end of the day, what petitioners are really after is a court order requiring the United States to shelter them from the sovereign government seeking to have them answer for alleged crimes committed within that sovereign's borders.").

The Munaf Court emphasized that "it is for the political branches, not the judiciary, to assess practices in foreign countries and to determine national policy in light of those assessments." Id.  In particular, the Court noted that the "judiciary is not suited to second-guess [Executive] determinations – determinations that would require federal courts to pass judgment on foreign justice systems and undermine the Government's ability to speak with one voice in this area." Id. at 2226 (citing The Federalist No. 42, p. 279 (J. Cooke ed. 1961) (J. Madison)).  In contrast, the "political branches are well situated to consider sensitive foreign policy issues, such as whether there is a serious prospect of torture at the hands of an ally, and what to do about it if there is." Id.

The extradition statute and the rule of non-inquiry both establish that the judiciary's role in extradition is limited, leaving the ultimate extradition decision within the discretion of the Secretary of State.  The issue before the Court is whether the Secretary's discretion has been constrained by Article 3 of the CAT and section 2242 of the FARR Act, thereby providing the Court with the power to exercise the writ of habeas corpus.

### b. United Nations Convention Against Torture ("CAT")

Article 3 of the CAT, which was signed by the United States on April 18, 1988 and ratified on October 21, 1998, prohibits

extradition of a fugitive if there are "substantial grounds for believing that he would be in danger of being subjected to torture."   United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, art. 3, April 18, 1988, 1465 U.N.T.S. 85, 114.   As ratified, provisions of Articles 1 through 16 of the CAT are not self-executing.   See, e.g., 136 Cong. Rec. S17486-01, S17492, 1990 WL 168442, at *18; S. Exec. Rep. 101-30, at 18 (1990); Castellan-Chacon v. INS, 341 F.3d 533, 551 (6th Cir. 2003); Cornejo I, 218 F.3d at 1017 (Kozinski, J., concurring). [2]

Article 3, as a non self-executing treaty provision, does not give rise to domestically-enforceable rights.   See Medellín v. Texas, 552 U.S. 491, 504 (2008) (recognizing that non self-executing treaties – "while they constitute international law commitments - do not by themselves function as binding federal law.").   Non self-executing "treaty stipulations . . . can only be enforced pursuant to legislation to carry them into effect." Id. at 505.   Therefore, the extent to which the United States' obligations pursuant to Article 3 of the CAT are domestically

---

[2]      See also S. Exec. Rep. No. 101-30, at 17-18 ("The reference in Article 3 to 'competent authorities' appropriately refers in the United States to the competent administrative authorities who make the determination whether to extradite, expel, or return . . . . Because the Convention is not self-executing, the determinations of these authorities will not be subject to judicial review in domestic courts.").

enforceable depends entirely on the provisions of the FARR Act,[3] the CAT's implementing legislation.

### c. Foreign Affairs Reform and Restructuring Act ("FARR Act")

For the reasons set forth below, the Court finds that nothing in the text of the FARR Act or its implementing regulations indicates that Congress intended the Secretary of State's extradition decisions involving CAT claims to be subject to judicial review.  The Court finds that the FARR Act not only comports with statutory extradition procedures and the rule of non-inquiry, but expressly prohibits judicial review of the Secretary's extradition decisions involving CAT claims, thereby foreclosing review pursuant to the APA.

#### i. *Plain Language of the FARR Act*

Section 2242 of the FARR Act was enacted to implement Article 3 of the CAT, stating that it "shall be the policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture."  FARR Act § 2242(a). Section 2242(b) requires the heads of the appropriate administrative agencies to "prescribe regulations to implement the obligations of the United States under Article 3."  Id.

---

[3]     Pub.L. No. 105-277 ("FARR Act"), div. G, 112 Stat. 2681-822 (codified at 8 U.S.C. § 1231).

Section 2242(d), titled "Review and Construction," expressly

limits judicial review, stating:

> Notwithstanding any other provision of law, and
> except as provided in the regulations described in
> subsection (b) [regarding the regulations
> promulgated by the appropriate administrative
> agency], no court shall have jurisdiction to review
> the regulations adopted to implement this section,
> and nothing in this section shall be construed as
> providing any court jurisdiction to consider or
> review claims raised under the Convention or this
> section, or any other determination made with
> respect to the application of the policy set forth
> in subsection (a), except as part of the review of a
> final order of removal pursuant to section 242 of
> the Immigration and Nationality Act (8 U.S.C. [§]
> 1252).

FARR Act § 2242(d).

Pursuant to § 2242(b), the Secretary of State, the United

States official responsible for ultimately determining whether

to surrender a fugitive to a requesting state, adopted

extradition regulations to govern the implementation of Article

3.  These regulations set the standard of proof for torture

allegations, see 22 C.F.R. § 95.2(b); outline the procedures for

reviewing claims of torture, see id. § 95.3(a); and set forth

the Secretary's extradition options following the conclusion of

the relevant analysis, see id. § 95.3(b).

Most importantly, like § 2242(d) of the FARR Act, these

implementing regulations expressly restrict judicial review of

the Secretary's extradition decisions.  22 C.F.R. § 95.4, titled

"Review and Construction," states:

12

> Decisions of the Secretary concerning surrender of
> fugitives are matters of executive discretion not
> subject to judicial review.  Furthermore, pursuant
> to section 2242(d) of the [FARR Act] of 1998, P.L.
> 105-277, notwithstanding any other provision of law,
> no court shall have jurisdiction to review these
> regulations, and nothing in section 2242 shall be
> construed as providing any court jurisdiction to
> consider or review claims raised under the
> Convention or section 2242, or any other
> determination made with respect to the application
> of the policy set forth in section 2242(a), except
> as part of the review of a final order of removal
> pursuant to section 242 of the Immigration and
> Nationality Act (8 U.S.C. [§] 1252), which is not
> applicable to extradition proceedings.

22 C.F.R. § 95.4.

In interpreting a statute, the Court must first "determine whether the language at issue has a plain and unambiguous meaning." Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997). The determination of whether a statute is unambiguous is guided "by reference to the language itself, the specific context in which the language is used, and the broader context of the statute as a whole." Id. at 341 (internal citations omitted). If the language is plain and the "statutory scheme is coherent and consistent," the court does not have to inquire further. United States v. Ron Pair Enters., 489 U.S. 235, 240-41 (1989). In that situation, the "sole function of the court is to enforce [the statute] according to its terms." Caminetti v. United States, 242 U.S. 470, 485 (1917).

The FARR Act on its face clearly states that it does not create jurisdiction for a court to review the Secretary of State's application of Article 3 of the CAT.  FARR Act § 2242(d).  The regulations authorized by the FARR Act likewise state that "nothing in section 2242 shall be construed as providing any court jurisdiction to consider or review claims raised under the Convention or section 2242."  22 C.F.R. § 95.4.  Although the FARR Act § 2242(d) and 22 C.F.R. § 95.4 plainly contemplate judicial review of final orders of removal in the immigration context for compliance with the CAT and the FARR Act, they just as plainly do not contemplate judicial review for anything else.  See Cornejo II, 379 F.3d at 1086 (noting that if the FARR Act § 2242(d) and 22 C.F.R. § 95.4 contemplated judicial review for anything else, the "except" clauses for review of final orders of removal would be superfluous).

Article 3 of the CAT gives rise to domestically-enforceable rights only to the extent provided by its implementing legislation, the FARR Act.  Nothing in the FARR Act or its implementing regulations indicates that Congress intended to create judicial review and silently alter the existing statutory extradition scheme or the rule of non-inquiry.  At the time the FARR Act was passed, Congress was certainly aware that the Secretary of State was responsible for determining whether to surrender a fugitive by means of extradition pursuant to

14

statute, and that the rule of non-inquiry limited the scope of judicial review of this determination.  Despite this awareness, the FARR Act and its implementing regulations do not contain any language which suggests that these statutory procedures and judicial restraint principles should be superseded for CAT claims.  Even after enacting the FARR Act, Congress made no changes to the statutory extradition provisions for cases involving CAT claims.  In light of these factors, the Court finds that the jurisdiction provisions of the FARR Act, see § 2242(d), and its implementing regulations, see 22 C.F.R. § 95.4, comport with and preserve the statutory division of labor pursuant to 18 U.S.C. §§ 3184 and 3186 and the rationale supporting the rule of non-inquiry, both of which limit the role of the judiciary in the extradition context.

Furthermore, the same concerns regarding institutional competency and notions of separation of powers, "which place[] primary responsibility for foreign affairs in the Executive Branch," Kin-Hong, 110 F.3d at 110, remain present for extradition determinations involving CAT claims.  Petitioner's claim that the Secretary of State failed to exercise her obligations under the CAT, although framed as a question of law, would require the Court to review the evidence the Secretary relied upon in making her extradition determination.  Such evidence may include considerations beyond Petitioner's

15

individual concerns and may involve sensitive matters of foreign policy.[4]  Essentially, the Court would be "investigat[ing] the fairness of a requesting nation's justice system," and inquiring about "the procedures or treatment which await a surrendered fugitive in a requesting country."  These are precisely the inquiries courts have declined to address.  See Munaf, 128 S. Ct. at 2225 (the fear of torture in a foreign country "is a matter of serious concern, but . . . that concern is to be addressed by the political branches, not the judiciary.").  Finally, this is not an extreme case in which the Secretary of State has determined that Petitioner is likely to be tortured but decides to extradite him anyway, in violation of the Secretary's obligation under the FARR Act.  (See Johnson Dec. ¶ 8 (stating "The Secretary will not approve an extradition whenever she determines that it is more likely than not that the particular fugitive will be tortured in the country requesting extradition.").)

　　　In accordance with the language of the FARR Act and its implementing regulation, the Court finds that Congress did not intend to make the Secretary of State's extradition decisions

---

[4]　　In determining whether a fugitive should be extradited, the Secretary may consider factors including but not limited to: whether the extradition request was politically motivated, whether the fugitive is likely to be persecuted or denied a fair trial or humane treatment upon his or her return, the views of relevant regional bureaus such as U.S. Embassies, human rights reports, and information concerning judicial and penal conditions and practices of the requesting State.  (See Johnson Dec. ¶¶ 4, 6-7.)

involving CAT claims subject to judicial review, and to the
contrary, expressly prohibited such review.  See FARR Act §
2242(d); see 22 C.F.R. § 95.4.  Even if such review was not
expressly prohibited, the Court would still decline to exercise
the power of the writ of habeas corpus in this case because
doing so requires the Court, to at least some degree, pass
judgment on foreign justice systems and may potentially
undermine the Government's ability to speak with one voice in
this area.  As noted in Munaf, "we need not assume the political
branches are oblivious to these concerns.  Indeed, the other
branches possess significant diplomatic tools and leverage the
judiciary lacks."  128 S. Ct. at 2226 (internal citations and
quotation marks omitted).

### d. Administrative Procedure Act

Petitioner Saldana contends that even if judicial review is
precluded under the CAT and the FARR Act, he is still entitled
to habeas review under the APA, 5 U.S.C. §§ 701-706, because the
Secretary of State's extradition decision is a "final agency
action for which there is no other adequate remedy in a court."
5 U.S.C. § 704.  Based on the analysis of the FARR Act, the
Court finds that Petitioner's contention is incorrect.

Section 701(a) states that APA review of an agency decision
is not available to the extent that: "(1) statutes preclude
judicial review; or (2) agency action is committed to agency

discretion by law." § 701(a)(1)-(2).  Since this Court has found that the FARR Act expressly prohibits judicial review of extradition decisions based on CAT claims, the APA cannot provide an alternative basis to circumvent this restriction. Furthermore, § 702, regarding the "Right to Review" states in relevant part that "[n]othing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground . . . ."  Id.  These "limitations on judicial review" would include both the FARR Act's statutory limitation on judicial review, as well as the traditional restraint in the rule of non-inquiry.  Cornejo II, 379 F.3d at 1087.

Finding that this Court may not exercise the power of the writ of habeas corpus through the APA to review the Secretary of State's extradition decision involving Petitioner's CAT claim, the Court GRANTS the United States' Motion to Dismiss as it pertains to this claim.

**e. Petitioner's Procedural Due Process Claims**

The United States' actions in reviewing a request for extradition are, of course, subject to the constraints of the Constitution.  Martin v. Warden, 993 F.2d 824, 829 (11th Cir. 1993).  The constitutional rights of individuals, including the right to due process, are superior to the government's

18

extradition treaty obligations.  See id.  Petitioner contends
that his procedural and substantive due process rights were
violated.  Specifically, Petitioner argues that (1) surrendering
an extraditee without a hearing to address the issue of torture
violates procedural due process, and (2) surrendering an
extraditee where there is a reasonable likelihood of torture
violates substantive due process.  (See Pet'r's Br. at 35-39.)

Turning first to Petitioner's procedural due process claim,
the Court finds that he is not entitled to a hearing to address
the issue of torture.  Petitioner cites no case law holding that
procedural due process entitles him to a hearing and admits that
no court has required a hearing while reviewing an extraditee's
CAT claim.  (See Pet'r's Resp. at 35.)  In extradition cases
where allegations regarding torture have been made, the
Secretary of State has a legal obligation to investigate the
allegations before making a final extradition decision.  See 22
C.F.R. § 95.3(a).  Appropriate policy and legal offices are
required to "review and analyze information relevant to the case
in preparing a recommendation to the Secretary as to whether or
not to sign the surrender warrant."  Id.  This information
includes materials submitted by a petitioner, persons acting on
his behalf, or other interested parties.  (Resp't's Mot. to
Dismiss, Johnson Dec. ¶ 7.)  Petitioner exercised his right to
submit evidence to the Secretary of State in support of his

allegations of torture, thereby receiving all the process he was due. See (Pet'r's Resp., Ex. 6, Letter to Secretary of State at 1-4.)

Furthermore, requiring the Department of State to provide Petitioner with an individual hearing is not well suited to the extradition process since the Secretary of State's decision to extradite may be based "not only on considerations individual to the person facing extradition, but may be based on foreign policy considerations instead." Prasoprat v. Benov, 421 F.3d 1009, 1016 (9th Cir. 2005); see also Kin-Hong, 110 F.3d at 110-11 (listing several factors the Secretary of State may consider when deciding to issue a surrender warrant that are not specific to an individual fugitive). The Court finds that there is no procedural due process requirement to provide Petitioner with a hearing, nor is a hearing necessary or appropriate. See generally Peroff v. Hylton, 563 F.2d 1099, 1102 (4th Cir. 1977) (rejecting a claim that due process requires the Secretary of State to conduct a hearing before issuing a warrant of extradition); Escobedo v. United States, 623 F.2d 1098, 1005-06 (5th Cir. 1980) (similar).

Next, Petitioner claims that surrendering an extraditee where there is a reasonable likelihood of torture violates substantive due process. Petitioner's claim assumes that the Secretary of State has decided to extradite him despite finding

20

that it is "more likely than not" that he would be tortured upon his return to Mexico.  This, however, is not the case.  In conformance with the FARR Act and the Department of State's regulations, the Secretary determined to extradite Petitioner only after determining that it is *not* "more likely than not" that he would be tortured.  See § 95.2(b); (Johnson Dec. ¶ 4.) The Secretary is obligated not to approve an extradition when the Department of State's analysis reveals that it is "more likely than not" that the particular fugitive will be tortured in the country requesting extradition.  (See Johnson Dec. ¶ 8.) Since Petitioner is not being extradited in violation of this obligation, there is no substantive due process claim.

## III. <u>CONCLUSION</u>

For the foregoing reasons, the Court GRANTS the United States' Motion to Dismiss.

SO ORDERED this 25th day of March, 2010.

s/ JON PHIPPS McCALLA
CHIEF UNITED STATES DISTRICT JUDGE
